# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Onterio Dimitri Brown,<br>    Petitioner,<br><br>v.<br><br>Harold W. Clarke,<br>    Respondent. | )<br>)<br>)<br>)    1:21cv39 (TSE/JFA)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Onterio Dimitri Brown ("Brown" or "petitioner"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his May 28, 2019 conviction in the Circuit Court of the City of Williamsburg and County of James City, Virginia for malicious wounding. Respondent has filed a Motion to Dismiss, with a supporting brief and exhibits. [Dkt. Nos. 10-12]. Brown has been notified of the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 13], and he has not responded. Accordingly, this matter is now ripe for disposition. A review of the record in this matter establishes that the respondent's Motion to Dismiss must be granted, and the petition will be dismissed with prejudice.

## I. Procedural History

Brown is detained under a final order of the Circuit Court of the City of Williamsburg and County of James City, Virginia entered on May 28, 2019. [Dkt. No. 11-1]; Commonwealth v. Brown, Case No. CR28044-00. Following a January 3, 2019 bench trial, Brown was convicted of one count of malicious wounding, in violation of Virginia Code § 18.2-51. On May 22, 2019, the circuit court sentenced Brown to 15 years in prison, with 8 years and 11 months suspended. The final order imposing the judgment was entered on May 28, 2019. Id.

On direct appeal, Brown challenged the sufficiency of the evidence to sustain his conviction. The Court of Appeals of Virginia denied Brown's petition for appeal on January 9, 2020, and a three-judge panel of that court adopted the January 9, 2020 order in its April 3, 2020 order denying Brown's appeal. [Dkt. Nos. 11-2 and 11-3]; Brown v. Commonwealth, Record No. 0839-19-1. The Court of Appeals found the following facts in its per curiam opinion:

> Around 10:30 p.m. on April 29, 2018, Javon Edwards and Tierra Jackson drove to Jackson's apartment to get her laundry basket because they were doing laundry at a nearby laundromat. When Jackson exited the vehicle, Jequan Carroll confronted her about being with Edwards. Jackson "ignored" Carroll and went inside her apartment. Carroll began "beating on the door," so Edwards "stepped out of [his] vehicle." Jackson then exited the apartment, and Carroll followed behind her, arguing and yelling. Edwards asked Carroll "why [are] you arguing with her?" In response, Carroll redirected his attention to Edwards.
>
> Carroll and Edwards exchanged words and agreed to engage in a fistfight. Edwards walked towards Carroll; Carroll pulled out a handgun from his waistband and handed it to a person standing to his right. Although Edwards was watching the gun, he noticed appellant "trying to get in behind [him]." Edwards turned to face appellant and asked "[s]o what, you all going to jump me now?" Appellant "pulled out a knife" and told Edwards "It ain't that kind of party," then "lunged" at Edwards with the knife.
>
> Edwards attempted to block the knife and "grabbed it with [his] left hand." Edwards drew his handgun and fired one shot at appellant. Appellant was struck in the hip and fell to the ground. Edwards was then shot from behind by someone he could not identify. Edwards fell to the ground and was kicked repeatedly about his head and body. The assailants then fled together.
>
> Carroll helped appellant up from the ground and took him from the scene to the hospital. Edwards was treated on scene by emergency personnel and went to the hospital where he received stitches in his left index finger from a wound sustained when he grabbed appellant's knife. Edwards also received treatment for a gunshot wound to his right buttock.
>
> While being treated on scene, Edwards told emergency personnel that someone had attacked him with a knife and that he shot the assailant. Edwards provided police with a physical description of the assailant at the scene and later at the hospital. Edwards's statements at the scene were recorded on police body cameras, and the recordings were reviewed and admitted at trial. Edwards had briefly met appellant on one previous occasion and acknowledged that appellant was his second cousin. Edwards could not remember appellant's name until someone told him during a conversation about the shooting several days later.

2

> Edwards testified that he recognized appellant's face during the event, regardless of what his name was. Edwards identified appellant at trial.
>
> Williamsburg City Police Investigator Richard Schugeld interviewed appellant at the hospital and asked him whether "he carried a knife down to the altercation." Appellant responded that he "always ha[d] a knife," and described it as a blue knife with a folding blade.
>
> Appellant's niece, Jasmine Strong, lived next door to Jackson and testified that she saw the altercation. Strong asserted that appellant was shot when he tried to break up a fight between Edwards and Carroll. Strong claimed that she did not see appellant with a knife and that Edwards and Carroll had exchanged "at least" five punches before appellant intervened. Strong conceded that she never told the police that appellant tried to break up the fight or that he did not have a knife.
>
> Appellant testified that he stepped out of his girlfriend's apartment to smoke a cigarette and heard the nearby argument between Carroll and Edwards. Appellant claimed they had already begun fighting as he walked toward them to break up the affray. When he went "to get in between them," Edwards "pull[ed] his gun." Appellant denied having a knife when he confronted Edwards. According to appellant, he pushed Edwards's gun down, and was struck in his hip by a bullet. Appellant fell to the ground and "got shot again" from a bullet that went through Edwards. Appellant acknowledged that he was familiar with Edwards but denied knowing Carroll. Carroll nevertheless helped him from the ground and drove him to the hospital after the shooting. Appellant conceded that he had been convicted of "[m]ore than" seven felonies.
>
> Appellant moved to strike the evidence at the close of the Commonwealth's case in-chief and at the close of all the evidence; the trial court denied both motions. The trial court convicted appellant of maliciously wounding Edwards with a knife. Appellant filed a pro se motion to set aside the verdict; the trial court denied the motion. The trial court sentenced appellant to fifteen years' incarceration, with eight years and eleven months suspended. This appeal followed.

[Dkt. No. 11-2 at 1-2].

The Supreme Court of Virginia refused Brown's petition for appeal on December 29, 2020. [Dkt. No. 11-4]; Brown v. Commonwealth, Record No. 200475. Brown did not seek other postconviction relief in state court.

On or about January 11, 2021, Brown filed his current federal petition for a writ of habeas corpus, in which he has raised the following grounds for relief:

3

I. The trial court erred in denying Brown's motion to set aside the verdict due to intrinsic fraud as the arrest warrant and grand jury indictment were secured by perjury and fraud in violation of due process.

II. The evidence was insufficient to prove beyond a reasonable doubt that Onterio Brown was the individual who attacked Javon Edwards.

III. The evidence was insufficient to prove beyond a reasonable doubt that Onterio Brown committed a malicious wounding.

IV. The verdict was constitutionally infirm as it was based solely on surmise, speculation, and ungrounded conjecture.

V. The Court of Appeals of Virginia and Virginia Supreme Court denied petitioner a full and fair hearing and the Court of Appeals order is an unreasonable determination of the facts presented and violated due process and the Virginia Supreme Court refused Brown's petition for appeal.

[Dkt. No. 1 at 5-11].

## II. Exhaustion and Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). To satisfy the exhaustion requirement, a petitioner "must have presented to the state court 'both the operative facts and the controlling legal principles.'" Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (citation omitted). process." In the instant case, Respondent admits Brown has exhausted claims (II) through (V). [Dkt. No. 11 at 4].

Claim (I) alleges that the arrest warrant and the indictment were obtained by intrinsic fraud because each was obtained by perjury, fraud, and the use of false information. [Dkt. No. 1 at 5]. Brown raised claim (I) in the circuit court as part of his pro se motion to vacate. The subsequent direct appeal, however, only challenged the sufficiency of the evidence. If Brown attempted to rise the claim now in state court, it would be barred as untimely under the state habeas statute of limitations, Virginia Code § 8.01-654(A)(2), which constitutes a bar to this Court's review of any federal claim he raised in state habeas regarding the three revocation

judgments.[1] See Breard v. Pruett, 135 F.3d 615, 619 (4th Cir.), cert. denied sub nom., Breard v. Greene, 523 U. S. 371 (1998); Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir.), cert. denied, 519 U.S. 1002 (1996) ("[a] habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and 'clearly and expressly' denied on the independent, adequate state ground of procedural default."); Sparrow v. Dir., Dep't of Corrs, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (recognizing § 8.01-654(A)(2) as an independent and adequate bar). Further, since Brown did not raise claim (I) on direct appeal, the claim would also be barred under the rule of Slayton v. Parrigan, 215 Va. 27 (Va. 1974) because Brown could have raised it on direct appeal and therefore it was barred from review in state habeas. Id. at 29-30.[2] "The Fourth Circuit has repeatedly recognized that the procedural default rule set forth in Parrigan constitutes an adequate and independent state law ground for decision." Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (quoting Mu'min v. Pruett, 125 F.3d 192, 196 (4th Cir. 1997)); see Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2005) (Slayton v. Parrigan is a procedural bar that "constitutes an adequate and independent state law ground for default" and precludes federal

---

[1] Brown alleges that the Court of Appeals of Virginia ruled on claim (I) because he noted on page 4 of his petition for appeal that on May 22, 2019, the circuit court "denied the motion to set aside the conviction." [Dkt. No. 1-1 at 4]. The statement, however, is included in the section of the petition for appeal entitled "Statement of the Case" and simply reflects the chronological progression of the criminal proceedings in the circuit court. [Id. at 4-5]. Brown's petition for appeal includes four assignments of error, which do not include an assertion of error or argument alleging the warrant or indictment was procured by intrinsic fraud, perjury, or false information. The four assignments of error concern the sufficiency of the evidence and correspond with claims (II) through (V) in the instant § 2254 petition, which respondent admits are exhausted. The order denying the petition for appeal makes the same passing mention that the motion to vacate was denied in its statement of the chronological progression of the criminal proceedings in the circuit court. [Dkt. No.1-3 at 2].

[2] The rule in federal proceedings is the same. See, e.g., United States v. Harris, 293 F.3d 970, 976-77 (6th Cir. 2002) (defendant's claim that district court erred by failing to dismiss his indictment because it was procured with perjured testimony is not reviewable on appeal because the defendant neither prior to nor during his trial requested dismissal of his indictment based on the alleged perjury) (citing Fed. R. Crim. P. 12(b)(2); United States v. Hayes, 218 F.3d 615, 619-20 (6th Cir. 2000)); United States v. Stewart, No. 1:06cr00046, 2011 U.S. Dist. LEXIS 113440, *6-8 (W.D. Va. Oct. 3, 2011) (finding claim the government used perjured grand jury testimony to obtain an indictment, without correcting the perjury, defaulted in a § 2255 habeas proceeding because it could have been raised at trial and on direct appeal), appeal dismissed, 469 F. App'x 202 (4th Cir. Va., 2012); see also United States v. McCord, 33 F.3d 1434, 1444 n.24 (5th Cir. 1994) ("objections based on defects in the indictment, other than those attacking jurisdiction or claiming that the indictment fails to charge an offense, are waived if not made prior to trial").

5

habeas review of the merits of the claim) (citing Wright v. Angelone, 151 F.3d 151, 159-60 (4th Cir. 1998)).

Accordingly, claim (I) is simultaneously exhausted and defaulted for the purposes of federal habeas review. Gray v. Netherland, 518 U.S. 152, 161-62 (1996) (internal quotation marks and citations omitted); Bassette v. Thompson, 915 F.2d 932, 936-37 (4th Cir. 1990).

The merits of a defaulted claim, however, are not barred from federal habeas review if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage of justice. Vinson, 436 F.3d at 417. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him ...." Coleman v. Thompson, 501 U.S. 722, 753 (1991). "This requires a demonstration that the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." Hedrick v. True, 443 F.3d 342, 366 (4th Cir. 2006). Factors that may constitute "cause" include: (1) "interference by officials that makes compliance with the State's procedural rule impracticable;" (2) "a showing that the factual or legal basis for a claim was not reasonably available to counsel;" (3) novelty of the claim; and (4) constitutionally ineffective assistance of counsel. Wright v. Angelone, 151 F.3d 151, 160 n.5 (4th Cir. 1998) (quoting McCleskey v. Zant, 499 U.S. 467, 493-94 (1991)). Finally, the absence of due diligence by the petitioner will defeat an assertion of cause, see Hoke v. Netherland, 92 F.3d 1350, 1354 n.1 (4th Cir. 1996), and a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

Brown has not demonstrated cause for the procedural default of his claim. He has not pointed to an external factor that prevented him from raising his claim in state court, and the narrow avenue of review recognized in Martinez does not apply in Brown's case to provide the requisite cause because he does not allege ineffective assistance of counsel. Brown, however, has

argued that he is actually innocent [Dkt. No. 1 at 15], which the Court construes as an argument that his conviction is a miscarriage of justice.[3]

Proof of a fundamental miscarriage of justice requires "a constitutional violation [that] has probably resulted in the conviction of one who is 'actually innocent' of the substantive offense." Richmond v. Polk, 375 F.3d 309, 323 (4th Cir. 2004) (citation and internal quotation marks omitted). In McQuiggin v. Perkins, 569 U.S. 383 (2013), the Supreme Court held that a convincing claim of actual innocence "may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief," and then noted the exception applies only in a "severely confined category" – that is, cases in which reliable *new evidence* shows that "it is more likely than not that 'no reasonable juror' would have convicted" the petitioner had the evidence been available at trial. Id. at 395 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Actual innocence is defined as "factual innocence, not mere legal insufficiency," Bousley v. United States, 523 U.S. 614, 623 (1998), and requires that a petitioner establish that "it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence" Schlup, 513 U.S. at 327.

Brown has not presented any new evidence to establish a claim of actual innocence. Thus, the rigorous requirements of Schlup and McQuiggin, are not met such as to allow federal review of his procedurally defaulted claim. See Sparrow, 439 F. Supp. 2d at 588-89 (rejecting fundamental miscarriage of justice argument when petitioner "introduce[d] nothing new, but present[ed] instead a selective version of the facts and omit[ted] those facts belying his actual innocence claim").

In any event, claim (I) has no merit. Brown alleges that the arrest warrant and the indictment were obtained by perjury and intrinsic fraud. However, the "sufficiency of an

---

[3] Brown has also claimed he has established his innocence in the motion for bail he filed along with his habeas petition. [Dkt. No. 5 at 3].

indictment ... is primarily a question of state law," Tapia v. Tansy, 926 F.2d 1554, 1560 (10th Cir. 1991), and deficiencies in state court indictments "are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985). With regard to the warrant, the evidence at the preliminary hearing in general district court included the evidence Brown offered in support of his motion to vacate.[4] At the conclusion of the preliminary hearing, however, the judge found probable cause and certified the charge of malicious wounding to the grand jury. The finding of probable cause negates any alleged problem with obtaining the warrant.[5] Cf. United States v. Mechanik, 475 U.S. 66, 70 (1986) (even assuming prejudice to the defendants, supervening jury verdict rendered any error in the grand jury proceeding harmless). The allegation of error that the indictment was based upon perjured testimony is, at best, likewise harmless.

Moreover, a "grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, or even on the basis of information obtained in violation of

---

[4] The preliminary hearing transcript was introduced as an exhibit by defense counsel at trial. The testimony at the preliminary hearing includes the victim's inability to name Brown until after Slodysko and Slodysko related how the victim had met Brown about one year earlier. (9/6/18 Tr. at 11, 21, 37-38, 46, 54-56).Slodysko testified the victim "knew" who had assaulted him, he "recognized the individual," but the victim "just didn't know his name." (Id. Tr. at 56). The general district court judge, based upon the testimony that included the explanation about recognizing Brown but not remembering his name the night of the assault and the officer telling him Brown's name, found probable cause to believe that Brown assaulted the victim that night and certified the matter to the grand jury. (Id. at 58-59). "[M]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987). "[C]ontradictory trial testimony ... merely establishes a credibility question for the jury." Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990); see Little v. Butler, 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony was perjured).

[5] This is consistent with the proposition that "[i]t is enough ... that there is some competent evidence to sustain the charge issued by the Grand Jury even though other evidence before it is incompetent or irrelevant in an evidentiary sense or even false." Coppedge v. United States, 311 F.2d 128, 132 (D.C. Cir. 1962) (emphasis added).

a defendant's Fifth Amendment privilege against self-incrimination." United States v. Calandra, 414 U.S. 338, 344-45 (1974) (citations omitted).

> The grand jury "does not sit to determine the truth of the charges brought against a defendant, but only to determine whether there is probable cause to believe them true, so as to require him to stand trial." Bracy v. United States, 435 U.S. 1301, 1302 (1978) (Rehnquist, J., in chambers). Accord, Hannah v. Larche, 363 U.S. 420, 499 (1960) ("The grand jury merely investigates and reports. It does not try.").

United States v. Udziela, 671 F.2d 995, 1000 (7th Cir. 1982); see also United States v. Williams, 504 U.S. 36, 50-55 (1992) (holding that the government is not required to present exculpatory evidence to the grand jury). Brown has not demonstrated that the alleged perjured testimony or false evidence influenced the grand jury's decision to indict. United States v. Geisler, 143 F.3d 1070, 1072 (7th Cir. 1998) (citation omitted); see Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988). Even then, though, he would have to show that the misconduct "substantially influenced the grand jury's decision to indict." Id.

The record in this case establishes that there were two versions of what occurred. The resulting verdict indicates that clearly, even after the opportunity for cross-examination and impeachment on the points noted by Brown, that there was proof beyond a reasonable doubt.[6] In short, there was at least some evidence upon which the grand jury could have found probable cause. See United States v. Johnson, 767 F.2d 1259, 1275 (8th Cir. 1985) (an indictment should

---

[6] The record establishes that the victim was thoroughly questioned regarding his identification of Brown as his attacker. On cross-examination, Brown's attorney questioned the victim regarding the description he gave of his attacker, whether he had viewed a photographic lineup, and elicited testimony from the victim that he did not name Brown as his attacker until Investigator Slodysko told him that Brown was the individual who had been shot, even though the victim and Brown were cousins who had briefly met a year prior to the incident. (1/3/19 Tr. at 62-65). On redirect, the victim testified that although he did not know Brown's name until his later conversation with Slodysko, he did recognize his face. (Id. at 75). In addition, as noted in its order denying the petition for appeal addressing the victim's credibility, the Court of Appeals noted that the victim's "recorded statements at the scene were consistent with his trial testimony." [Dkt. No. 11-2 at 5]. Further, Brown had also admitted to being present, was involved in whatever transpired, told Schugeld that he always carried a knife, and the victim's injury was consistent with his statement and testimony that he grabbed the knife when Brown lunged at him. [Id. at 4-6].

be sustained provided there is some competent evidence that could sustain the charge). Consequently, there was evidence sufficient to support a finding of probable cause.

Accordingly, claim (I) is barred from federal habeas review and will be dismissed. See Vinson, 436 F.3d at 417.

### III. Claims (II) through (V)

The Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA) abolished *de novo* review in federal habeas cases and requires deference to a state court's decision on the merits unless that decision was (1) contrary to, or an unreasonable application of a clearly established Supreme Court decision, or (2) based on an unreasonable determination of facts. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 403-13 (2000). Under 28 U.S.C. § 2254(e)(1), a federal court must presume a state court's determination of facts is correct unless rebutted by clear and convincing evidence. Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) (factual issue determined by state court "shall be presumed to be correct"); see also Sumner v. Mata, 455 U.S. 591, 591-93 (1983) (per curiam) (statutory presumption of correctness applies to state appellate court's rendition of historical facts).[7] "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). The AEDPA standard is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal citations and quotations omitted).

---

[7] In federal habeas, a federal court reviewing a state conviction for sufficiency of the evidence views the evidence in "the light most favorable to the prosecution" and the court presumes that if there were any conflicts in the evidence that "the trier of fact" resolved the conflicts in the evidence in "favor of the prosecution." Jackson v. Virginia, 443 U.S. 307, 319, 326 (1979).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The standard of reasonableness is an objective one. Id. at 410. The focus of a federal court under this standard "is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F. Supp. 152, 156 (E.D. Va. 1997). The Fourth Circuit recently stated that the

> deference under § 2254 ensures "state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." Harrington v. Richter, 562 U.S. 86, 103, (2011). Accordingly, we may grant habeas relief on claims adjudicated on their merits in state court only if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see also Cummings v. Polk, 475 F.3d 230, 237 (4th Cir. 2007).

Sigmon v. Stirling, 956 F.3d 183, 191 (4th Cir. 2020).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). A state court decision is unreasonable only if it is so erroneous that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents.'" Harrington v. Richter, 562 U.S. 86, 101 (2011)).

Furthermore, "'a determination on a factual issue made by a State court shall be presumed correct.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of

11

correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008) see Landrigan, 550 U.S. at 473-74 (citing 28 U.S.C. § 2254(e)(1)).

Because the Court of Appeals decision denying Brown's petition for appeal is the last reasoned state court opinion, this Court applies the "look through" doctrine to the last reasoned decision addressing the claim. See Wilson v. Sellers, 138 S. Ct. 1188, 1194 (2018) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

In claims (II) through (V), Brown argues that the Court of Appeals of Virginia erred when it found the evidence was sufficient to support his conviction for malicious wounding. Claims that the evidence was insufficient "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). As the Supreme Court of the United States explained in Coleman:

> First, on direct appeal, "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U. S. 1, 2 (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U. S. 766, 773 (2010)).

Id. See also Jackson, 443 U.S. at 319 (holding relevant standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). In this case, the state court's decision regarding the sufficiency of the evidence was reasonable and fully supported by the evidence as summarized above.

12

In claim (II), Brown argues that the evidence at trial was insufficient to prove his identity as the individual who attacked the victim. The Court of Appeals rejected this argument, noting that credibility is within the province of the trier of fact and concluding that the evidence supported the trial court's credibility determination.

> Edwards [the victim] provided police with appellant's description the night of the incident. Although Edwards initially told police that he did not know appellant's name, he reasonably explained at trial that he learned appellant's name several days later during a discussion about the shooting and subsequently told police. Edwards also stated that he was familiar with appellant's face the night of the incident because he had previously met appellant, and identified him without reservation, or objection, at trial. Further, *there was no reasonable dispute that appellant was the person who intervened in the altercation, a fact confirmed by both appellant's own and Strong's testimony.* Moreover, Edwards's delay in identifying appellant was "appropriately weighed as part of the entire issue of witness credibility, which is left to the [trier of fact] to determine." Juniper v. Commonwealth, 271 Va. 362, 415 (2006). On the totality of the circumstances present here, the trier of fact reasonably concluded that appellant was the perpetrator.

[Dkt. No. 11-2 at 4] (emphasis added). The Court of Appeals' finding the evidence was sufficient to support finding Brown was the perpetrator was not contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts.

In claim (III), Brown alleges that the "evidence was insufficient to prove beyond a reasonable doubt that [he] committed a malicious wounding." [Dkt. No. 1 at 12]. Brown argues that the Commonwealth failed to exclude the possibility that the victim either caused his own injury accidentally or "made up the story of the knife to justify his illegal use of the firearm." Id. The Court of Appeals rejected this argument on direct appeal, finding the trial court's credibility determination at trial was supported by the record:

> The trial court found that "there's two different versions of what took place." [The victim's] version "involve[d] [appellant] having a knife," and appellant's version involved him "not having a knife." The trial court rejected appellant's version and credited [the victim's] testimony. In doing so, the court found that Edwards's

13

testimony was consistent with his injury and was sufficient to establish that appellant lunged at him, unprovoked, with a knife and caused him bodily injury.

[Dkt. No. 11- 2 at 5]. The Court of Appeals further noted that Brown had admitted to police that he always carried a knife, which undercut his own testimony at trial. The Court of Appeals' finding the evidence was sufficient to support a determination Brown maliciously wounded the victim was not contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts.

In claim (IV), Brown contends that his conviction "was based solely on surmise, speculation, and ungrounded conjecture," because, he argues, "[t]here was no evidence to suggest that the minor laceration on [the victim's] finger was inflicted" with the requisite intent. [Dkt. No. 1 at 13]. The Court of Appeals' rejection of this argument was reasonable.

> Appellant asserts that the "minor cut" [the victim] sustained on his left hand was insufficient to establish the requisite intent. We disagree. Appellant acted with a "sedate, deliberate mind, and formed design" when he interjected himself into the altercation between Edwards and Carroll. Branch [v. Commonwealth, 14 Va. App. 836, 841 (1992).] Appellant, who was armed, attempted "to get in behind" [the victim], and when [the victim] asked appellant if he intended to "jump" him, appellant told him "it ain't that kind of party." Appellant then "lunged" at [the victim] with a knife. On this evidence, the trier of fact could reasonably infer that appellant acted with the requisite malicious intent from his use of a deadly weapon. See Williams [v. Commonwealth, 64 Va. App. 240, 249 (2015)]. Moreover, the record evinces that appellant intended to permanently harm [the victim] and that the injury to [the victim's] left hand was a natural, probable consequence of lunging at him with a knife. Indeed, [the victim] was forced to grab the knife blade with his hand to prevent a more significant injury to his body. Thus, the deliberate "method" and "circumstances under which" [the victim's] injury was inflicted were consistent with "an intent to maim, disfigure, disable, or kill." [Commonwealth v. Perkins, 295 Va. 323, 330 (2018)]; see also Gills v. Commonwealth, 141 Va. 445, 449 (1925) (finding malicious intent from a wound inflicted by a pocketknife); Morris v. Commonwealth, 17 Va. App. 575, 578 (1994) (upholding finding of malicious intent where defendant attacked victim with a knife).

[Dkt. No. 11- 2 at 7-8] (footnote omitted). The Court of Appeals' finding that the evidence was sufficient to support the finding that the injury was inflicted with the requisite intent was not

14

contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts.

In claim (V), Brown argues that the Court of Appeals and the Supreme Court of Virginia failed to afford him a "full and fair hearing," and that the courts' decisions regarding sufficiency of the evidence were based on an unreasonable determination of the facts. [Dkt. No. 1 at 14]. Brown's argument is predicated upon his belief that his arguments must be accepted and that discounting his evidence and the inferences drawn from the evidence deemed credible by the trier of fact is somehow inappropriate.

Brown makes four points regarding the Court of Appeals of Virginia's order denying his petition for appeal. First the court made an unreasonable determination of fact that he had a knife because Schugeld admitted on cross-examination that Brown had told him that he "owned" a knife. (1/3/19 Tr. at 102); [Dkt. No. 1 at 14]. While taken in isolation Brown's point is correct as to Schugeld's answer, however, Schugeld a few moments later testifies that Brown stated to him that "he always ha[d] a knife on him." Id. As noted, the victim also testified that Brown had a knife. The evidence, in the light most favorable to the Commonwealth, established that Brown had a knife. The fact that a knife was not recovered did not negatively impact the sufficiency of the evidence analysis of the Court of Appeals because the testimony about the use of the knife was sufficient to find a knife was used. See Jordan v. Commonwealth, 286 Va. 153, 158-59 (2013) (holding that pointing a firearm at a victim while directing him to exit a vehicle impliedly asserted that if he did not comply, the assailant would shoot him, which—combined with the victim's description of the firearm—was sufficient to find that the assailant possessed a firearm even though no firearm was recovered); see also Courtney v. Commonwealth, 281 Va. 363, 367 (2011) (defendant's statements that he had "a gun," and that he would "have to kill" or "shoot" the "victim if she continued to disregard his commands, combined with his opportunity to

15

discard an actual firearm, were sufficient to find him guilty of use or display of a firearm in the commission of a felony" where the firearm was not recovered); Powell v. Commonwealth, 268 Va. 233, 237 (2004) (affirming a conviction under Code § 18.2-53.1 despite the fact that the victims did not see a firearm and no firearm was ever recovered).

Brown next alleges that the court unreasonably found that Edwards told the police Brown's name prior to his arrest because Slodysko told Edwards Brown's name. [Dkt. No. 1 at 14]. Brown's argument is refuted by the court' order that acknowledges on two separate occasions that Brown learned his attackers name several days after the assault.

> Edwards could not remember appellant's name until someone told him during a conversation about the shooting several days later.
>
> ****
>
> Although Edwards initially told the police he did not know appellant's name, he reasonably explained at trial that he learned appellant's name during a discussion about the shooting and subsequently told police. Edwards also stated he was familiar with appellant's face the night of the incident because he had previously met appellant, and identified him without reservation, or objection, at trial. Further there was no reasonable dispute that appellant was the person who intervened in the altercation, a fact confirmed by appellant's own and Strong's testimony.

[Dkt. No. 11-2 at 2, 4].

Brown next attacks the court's characterization of Brown's attack on the victim as a "lunge." [Dkt. No. 1 at 14-15]. The victim, however, expressly testified that Brown "lunged" at him with a knife, that he grabbed the knife with his left hand, and drew and fired his weapon once before it jammed. (1/3/19 Tr. at 28). In further questioning, the victim again described Brown as "lunging" at him, and that the cut to his hand occurred when he grabbed the knife. (Id. at 29, 33). Brown's third point is devoid of merit.

Brown's final two points are the court's failure to mention the testimony of Dr. Elena Garrett, who treated the victim's injuries at the hospital, and the fact that the victim was not charged. [Dkt. No. 1 at 14-15]. Brown asserts Dr. Garrett's testimony was "critical" to his case,

but he never explains how. In any event, Dr. Garrett was called by the defense to introduce a statement attributed by her notes to the victim that he "pulled out a knife during the altercation and is unsure if he fell on it or not," but the statement is not tied to any injury. (1/3/19 Tr. at 119). To the extent Brown may assert this statement impeaches the victim in some manner, such an argument is tenuous at best. The victim testified the knife cut his left hand when he grabbed it after Brown lunged at him. Although the statement might have had some minimal impact on the victim's credibility, that matter was resolved in favor of the Commonwealth. As the appellate court noted, there were two different versions of what happened, and the evidence supported the trial court's rejection of Brown's testimony and crediting the victim's testimony. [Dkt. No. 11-2 at 5-6]. Such a ruling is not contrary to or an unreasonable application of federal law.

Brown's last point, that the victim was not charged, was a matter of prosecutorial discretion. See Bradshaw v. Commonwealth, 228 Va. 484, 492 (1984) ("the institution of criminal charges, as well as their order and timing, are matters of prosecutorial discretion") (citations omitted); see also McDonald v. Commonwealth, 274 Va. 249, 259 (2007) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.") (quoting United States v. Batchelder, 442 U.S. 114, 124 (1979)).

As the Court of Appeals noted, the case against Brown turned on the credibility of the witnesses. The trial court, sitting as factfinder, heard the testimony, observed the demeanor of the witnesses, and resolved conflicts in the testimony in favor of the victim and contrary to Brown. The record demonstrates that the Court of Appeals addressed the arguments raised on appeal and correctly applied the standard of review for sufficiency-of-the-evidence questions. In these circumstances, Brown has not met his burden under § 2254(d) and (e), and Ground V is without merit, and the Court of Appeals decision was not contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts.

## IV. Bail

Brown filed a motion for bail with his federal petition which is premised upon the sufficiency claims advanced in his petition. While federal district courts have the inherent authority to grant a state prisoner bail during the pendency of habeas proceedings, see, e.g., Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001), "[b]efore a prisoner may be released on bail pending a collateral attack on his conviction, he must show substantial constitutional claims on which he has a high probability of success, and exceptional circumstances making a grant of bail necessary for the habeas remedy to be effective." United States v. Eliely, 276 F. App'x. 270, 270 (4th Cir. 2008) (citing Lee v. Jabe, 989 F.2d 869, 871 (6th Cir. 1993); Calley v. Callaway, 496 F.2d 701, 702 (5th Cir. 1974)). Brown has not carried his burden and his motion will be denied.

## III. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 9] is granted, petitioner's motion for bail [Dkt. No. 5] is denied, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.[8]

Entered this 22nd day of _____ 2021.
Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge

---

[8] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Brown fails to meet this standard.